UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

RODNEY S. PERRY, SR.,

    Plaintiff,

    v.                                  CAUSE NO. 3:22-CV-308-DRL-MGG

RON NEAL *et al.*,

    Defendants.

## OPINION AND ORDER

Rodney S. Perry, Sr., a prisoner without a lawyer, filed a second amended complaint against Indiana State Prison Warden Ron Neal, Executive Assistant Mark Newkirk, and Debra Abrams. ECF 20. "A document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quotation marks and citations omitted). Nevertheless, under 28 U.S.C. § 1915A, the court must review the merits of a prisoner complaint and dismiss it if the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief.

Mr. Perry's second amended complaint alleges essentially the same facts as his earlier complaint, although he provides some additional details. Mr. Perry alleges that he was housed in segregation at Pendleton Correctional Facility before his transfer to Indiana State Prison on December 15, 2021, pursuant to the terms of a settlement agreement. At the time of his transfer, Mr. Perry had served all disciplinary segregation

or other restrictive status related to disciplinary offenses. A counselor at Pendleton recommended that Mr. Perry be transferred to a security level two facility, but classification recommended he stay at security level three even though he met the requirements for security level two.

On December 29, 2021, Debra Abrams classified Mr. Perry to administrative segregation, and Warden Neal approved her classification decision. Mr. Perry appealed the classification decision, and Mark Newkirk denied the appeal on January 5, 2022. Thus, each of the defendants played a role in determining how Perry was classified at Indiana State Prison.

Mr. Perry disagreed with the classification decision because he doesn't believe he should be housed in segregation when he served all time in segregation that was associated with disciplinary sanctions. As previously explained, the Constitution doesn't create a due process liberty interest in avoiding transfer within a correctional facility or remaining in the general prison population. *See Wilkinson v. Austin*, 545 U.S. 209, 222 (2005); *Sandin v. Conner*, 515 U.S. 472 (1995). Instead, an inmate will be entitled to due process protections only when the more restrictive conditions pose an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 484. After *Sandin*, inmates have no liberty interest in avoiding short-term transfer to segregation for administrative, protective, or investigative purposes, even when they are subjected to harsher conditions as a result. *See, e.g., Townsend v. Fuchs*, 522 F.3d 765, 766 (7th Cir. 2008); *Lekas v. Briley*, 405 F.3d 602, 608-09 (7th Cir. 2005). Placement in long-term segregation approaching a year or more can

implicate a liberty interest, requiring further inquiry into whether the conditions of confinement impose an atypical, significant hardship. *See Marion v. Columbia Corr. Inst.*, 559 F.3d 693, 698-99 (7th Cir. 2009) (determination of whether 240 days in segregation imposed an atypical, significant hardship could not be made at the pleading stage). *See also Atwater v. Nickels*, No. 21-2510, 2022 WL 1468698, at *1 (7th Cir. May 10, 2022) (citing *Marion*, 559 F.3d at 694-98).

Here, Mr. Perry was in segregation at Indiana State Prison for approximately seven months when he filed his amended complaint. He expected that he would remain in administrative segregation through the end of 2022, though his current classification is unknown. Thus, it's unclear from the second amended complaint whether Mr. Perry remained in segregation at ISP long enough to implicate due process concerns. Even if he had, his allegations don't state a claim.

Mr. Perry asserts that the conditions in administrative segregation at Indiana State Prison pose an atypical and significant hardship based on several differences between the conditions experienced in segregation at ISP compared to the conditions in general population and the conditions in a similar segregation unit at Pendleton Correctional Facility. If Mr. Perry were housed in general population at ISP, he represents that he would be permitted to use cleaning supplies to clean his own cell. He could order food from commissary. He could possess hardback religious books. He could attend religious services. And he could obtain pest control products, when needed. If Mr. Perry were housed in segregation at Pendleton Correctional Facility, he wouldn't be subjected to mice, roaches, or pigeons. Offenders wouldn't pass out food or ice. And, Mr. Perry would

3

have access to law clerks who come to the range. Additionally, the windows would open to provide for better ventilation than what is available in segregation at ISP. Mr. Perry prefers the way insulin was administered at Pendleton Correctional Facility, because he believes it is more sanitary. He would be permitted to use a counselor's phone for legal matters. In warm weather, wall fans would be used to keep the unit cool. And Christmas sacks would be distributed to inmates.

Most of these differences are trivial, but even if these differences in the conditions did amount to an atypical and significant hardship, the due process rights that Mr. Perry was entitled to were quite limited. When such a liberty interest is at stake, an inmate is only entitled to "some informal, nonadverserial" procedures. *Westefer v. Neal*, 682 F.3d 679, 684-85 (7th Cir. 2012). Informal due process requires "some notice" of the reason for the inmate's placement and an opportunity to present his views. *Id.* The initial placement review need only take place "within a reasonable time" and the inmate is not entitled to a hearing, to call witnesses, or to require prison officials to interview witnesses. *Id.* He is also not entitled to a written decision describing the reasons for his placement or to a formal appeal procedure. *Id.* at 686. He is entitled to periodic review of his placement, but this process may also be informal and non-adversarial. *Id.* The frequency of such review is "committed to the administrative discretion of prison officials." *Id.* at 685. Review "need only be sufficiently frequent that administrative segregation does not become a pretext for indefinite confinement." *Id.* at 686. In short, "the requirements of informal due process leave substantial discretion and flexibility in the hands of the prison administrators." *Id.* at 685.

4

Nothing in Mr. Perry's complaint suggests that he didn't receive the minimal process that he was due. He admits that some process was in place: Debra Abrams made the classification decision, Ron Neal approved it, Mr. Perry had an opportunity to file an appeal, and the appeal was denied by Mark Newkirk. At the time the amended complaint was filed, approximately six months had passed since his appeal had been denied. Even if Mr. Perry had received no further review of his placement, that is not sufficiently long to conclude that his due process rights were violated. Therefore, these allegations don't state a claim.

Mr. Perry also asserts that the defendants violated his rights under the First Amendment and RLUIPA by prohibiting him from attending services for Jehovah's Witnesses, but he already asserted these claims against Warden Neal and Debra Abrams in *Perry v. Neal*, No. 3:22-CV-273 (filed Apr. 5, 2022). In that case, Mr. Perry was granted leave to proceed against Warden Ron Neal on the RLUIPA claim, but he was not granted leave to proceed against Ron Neal on the First Amendment claim, and he was not granted leave to proceed against Debra Abrams on either claim. Regarding the First Amendment claim, Mr. Perry wasn't allowed to proceed because the factual allegations didn't state a claim. It is malicious to sue the same defendants for the same events in two cases. *See Lindell v. McCallum*, 352 F.3d 1107, 1109 (7th Cir. 2003) (suit is "malicious" for purposes of Section 1915A if it is intended to harass the defendant or is otherwise abusive of the judicial process). Here, nothing suggests that raising these claims again was intended to harass Debra Abrams or Ron Neal, and Mr. Perry won't not be assessed a strike at this time. However, he also won't be permitted to proceed against Warden Neal or Debra

5

Abrams here for violations of his religious rights while in administrative segregation at ISP when the court has already addressed those allegations in another pending lawsuit.

Though Mr. Perry didn't sue Mark Newkirk for violations of the First Amendment and RLUIPA previously, Mr. Perry can't proceed against Newkirk on a First Amendment claim for the same reasons that Judge DeGuilio found that Mr. Perry couldn't proceed against Warden Neal or Debra Abrams. Mr. Perry's second amended complaint doesn't contain facts from which it can be plausibly inferred that Mark Newkirk decided to deny Perry's appeal and keep him in segregation not because of his history of disciplinary offenses and concerns about safety or security but instead because he wanted to deprive Mr. Perry of the ability to practice his faith. *Perry v. Neal*, No. 3:22-CV-273 (order dated Sept. 14, 2022, ECF 42 at 4).

Furthermore, Mr. Perry won't be granted leave to proceed against Newkirk on a RLUIPA claim. Although money damages and injunctive relief are available under the First Amendment, only injunctive relief is available under RLUIPA. *Sossamon v. Texas*, 563 U.S. 277, 285 (2011). Mr. Perry is already proceeding on a RLUIPA claim against Warden Neal, and Warden Neal is the correct party for an injunctive relief claim. See *Gonzalez v. Feinerman*, 663 F.3d 311, 315 (7th Cir. 2022) ("The warden . . . is a proper defendant [for] injunctive relief [and is] responsible for ensuring that any injunctive relief is carried out."). Thus, he may not proceed against Mark Newkirk on a RLUIPA claim here.

Finally, Mr. Perry alleges that the defendants deprived him of constitutional conditions of confinement while in segregation. As with his First Amendment and

6

RLUIPA claims, this isn't the only case where Mr. Perry has alleged that he was subjected to unconstitutional conditions of confinement while housed in administrative segregation at ISP. In *Perry v. Lott*, No. 3:22-CV-259-DRL-MGG, Mr. Perry sued Lt. Lott for subjecting him to unconstitutional conditions of confinement. He was granted leave to proceed on that claim, and because Mr. Perry alleged that the conditions were ongoing, the court added Warden Ron Neal in his official capacity as a defendant. Warden Ron Neal was not sued in his individual capacity in that case, and neither Abrams nor Newkirk were named as defendants. It is unclear why Mr. Perry would split his claims in this manner, but it's not the court's job to tell him how to litigate his cases. Accordingly, his conditions claims will be considered to the extent that they have not already been addressed.

Mr. Perry claims that he was denied cleaning supplies, there was excrement in and around the rim of his toilet, and there was a leak in the plumbing coming through the back wall of his cell. He further alleges that there was an infestation of mice and roaches. On February 25, 2022, he notified each of the defendants of the conditions in his cell. They responded by moving him to another cell. That cell was also filthy. He notified the defendants and was again moved. Mr. Perry claims the next cell was no better, and that he remained there at the time he filed his complaint. Mr. Perry further indicates that the defendants knew that the unit was infested with mice and roaches, and that by assigning him to administrative segregation, he would be subjected to living in an infested area.

The Eighth Amendment prohibits conditions of confinement that deny inmates "the minimal civilized measure of life's necessities." *Townsend v. Fuchs*, 522 F.3d 765, 773

(7th Cir. 2008) (citations omitted). In evaluating an Eighth Amendment claim, courts conduct both an objective and a subjective inquiry. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). The objective prong asks whether the alleged deprivation is "sufficiently serious" that the action or inaction of a prison official leads to "the denial of the minimal civilized measure of life's necessities." *Id*. (citations omitted). Although "the Constitution does not mandate comfortable prisons," *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981), inmates are entitled to adequate food, clothing, shelter, bedding, hygiene materials, and sanitation, *Knight v. Wiseman*, 590 F.3d 458, 463 (7th Cir. 2009); *Gillis v. Litscher*, 468 F.3d 488, 493 (7th Cir. 2006). On the subjective prong, the prisoner must show the defendant acted with deliberate indifference to the inmate's health or safety. *Farmer*, 511 U.S. at 834. As the court of appeals has explained:

> [C]onduct is deliberately indifferent when the official has acted in an intentional or criminally reckless manner, i.e., the defendant must have known that the plaintiff was at serious risk of being harmed and decided not to do anything to prevent that harm from occurring even though he could have easily done so.

*Board v. Farnham*, 394 F.3d 469, 478 (7th Cir. 2005) (internal citations and quotations omitted); *see also Reed v. McBride*, 178 F.3d 849, 855 (7th Cir. 1999) (where inmate complained about severe deprivations but was ignored, he established a "prototypical case of deliberate indifference.").

Though Mr. Perry has now alleged that Ron Neal, Mark Newkirk, or Debra Abrams learned of the condition of the first two cells Mr. Perry was assigned to, he admits that they responded to his complaints by moving him to another cell both times. He does

not allege that the defendants were aware of any specific conditions regarding his third cell, where he remained when this was drafted.

Mr. Perry alleges that the defendants were aware that there was a problem with mice and roaches before assigning him to the segregation unit. Prolonged exposure to infestations of mice and roaches can amount to an Eighth Amendment violation. *See Davis v. Williams*, 216 F.Supp.3d 900, 907-08 (N.D. Ill. 2016). But, given their roles at the facility, it isn't plausible to infer that the defendants were present in the segregation unit sufficiently often to have first-hand knowledge of the magnitude of the problem. Neither knowing that there is a problem generally nor failing to take steps to correct it when that responsibility has been delegated to others establishes that they were deliberately indifferent to it. There is no general *respondeat superior* liability under 42 U.S.C. § 1983, and defendants can't be held liable simply because they employed or supervised the alleged wrongdoer. *See Burks v. Raemisch*, 555 F.3d 592, 594-96 (7th Cir. 2009) ("[P]ublic employees are responsible for their own misdeeds but not for anyone else's."). It can't be plausibly inferred from the facts alleged in the second amended complaint that the defendants were deliberately indifferent to the problems with mice and roaches.

"The usual standard in civil cases is to allow defective pleadings to be corrected, especially in early stages, at least where amendment would not be futile." *Abu-Shawish v. United States*, 898 F.3d 726, 738 (7th Cir. 2018). However, "courts have broad discretion to deny leave to amend where . . . the amendment would be futile." *Hukic v. Aurora Loan Servs.*, 588 F.3d 420, 432 (7th Cir. 2009). For the reasons previously explained, such is the case here.

For these reasons, this case is DISMISSED under 28 U.S.C. § 1915A.

SO ORDERED.

March 31, 2023                                         *s/ Damon R. Leichty*
                                                      Judge, United States District Court